[Cite as *State v. Grier*, 2024-Ohio-1980.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                        :

    Plaintiff- Appellee,                         :

             v.                                          :

                              No. 113065

GRANT GRIER,                                         :

    Defendant-Appellant.                      :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  May 23, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-674037-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Sarah J. Denney, Assistant Prosecuting Attorney, *for appellee.*

Russell S. Bensing, *for appellant.*

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} Defendant-appellant, Grant Grier, was convicted of rape after a jury trial.  Because we do not find the victim's testimony to be wholly incredible and that

Grier's conviction is not against manifest weight of the evidence, we affirm the judgment of the trial court.

## PROCEDURAL HISTORY AND RELEVANT FACTS

{¶ 2} On September 23, 2022, the Cuyahoga County Grand Jury indicted Grier for one count of rape in violation of R.C. 2907.02(A)(2). A jury trial began on May 30, 2023. The jury returned its verdict of guilty on June 2, 2023. On July 11, 2023, the trial court sentenced Grier to a term of imprisonment from three to four and one-half years and also found him to be a Tier III sexual offender.

{¶ 3} At trial, J.G. testified Grier engaged in forceful sexual conduct with her on April 4, 2019, against her will. She testified that they met in 1995, had a child together that year, and since then had an inconsistent relationship. After 2014, they saw more of each other and, in April 2018, they were married. At that time, they rented a home in Cleveland, Ohio. By the end of 2018, the relationship had soured and Grier would leave the home for days at a time.

{¶ 4} In early 2019, J.G. left the house for a few weeks and returned in late February 2019. After a week of her being back, Grier would come to the house on an inconsistent basis. By April 2019, J.G. was packing up the house to move, so she slept on the couch in the living room. Grier came to the house one evening when J.G. was watching television. Grier entered the house, and they argued. She asked him to leave, but he did not. They were lying separately on the sectional sofa and both fell asleep, fully clothed.

{¶ 5} J.G. testified that she woke up with Grier on top her, pulling down her pants saying he wanted to have sex. She pushed him off her and told him that she did not want to have sex, but Grier removed one of her pant legs. He then pulled down his own pants and vaginally penetrated her. J.G. testified that after approximately 30 seconds, Grier ejaculated inside her. After that, Grier went to the bathroom, then left the home without saying anything to her.

{¶ 6} J.G. remained on the couch for about an hour; she testified that she did not know what to do. She said that all she knew was that she was "sore" and that she "hurt emotionally." She also said she was physically injured, seeing streaks of blood from her vagina. She eventually left the house and drove to Lake Erie. After that, she drove to the Nord Center in Lorain, Ohio. There she underwent an examination conducted by a Sexual Assault Nurse Examiner ("SANE nurse"). The exam was done the same day as the assault, April 4, 2019. At that time, J.G. did not want to file a police report. She was later contacted in November 2021, by a Cuyahoga County Prosecutor's Office investigator, Peter Demopolous. She agreed to the prosecution of a case against Grier.

{¶ 7} On cross-examination, J.G. was asked extensively about differences between her testimony in court and the narrative portion of the SANE examination as well as statements she made to Demopolous. J.G. did not recall what she had told the SANE examiner or Demopolous.

{¶ 8} Carol Krausher, the SANE nurse, testified that she examined J.G. on April 4, 2019. She interviewed J.G. and collected swabs for a sexual assault kit. On

cross-examination, she testified as to the narrative portion of her report. Through questioning, Grier's counsel highlighted differences between Krausher's report and J.G.'s testimony. Salesha Frantz, a Forensic DNA Analyst at the Cuyahoga County Regional Forensic Science Laboratory, testified that there was seminal fluid found in the sexual assault kit, which was tested for DNA. The DNA from the seminal fluid was a match with Grier.

## LAW AND ARGUMENT

{¶ 9} Grier's sole assignment of error reads as follows:

> The trial court erred by entering a conviction that was against the manifest weight of the evidence, in violation of Defendant's right to due process of law as protected by the Fifth and Fourteenth Amendments to the United States Constitution.

{¶ 10} Grier notes that J.G. gave significantly different accounts of the crime of which he was convicted; one during the SANE examination, and one during her testimony at trial. He argues that J.G.'s testimony could not be believed and his conviction is against the manifest weight of the evidence. The state argues the conviction was proper where the jury heard J.G.'s testimony and resolved any potential inconsistencies within her testimony and prior statements and, as such, the conviction was not against the manifest weight of the evidence.

{¶ 11} A manifest weight challenge to a conviction asserts the state has not met its burden of persuasion in obtaining that conviction. *State v. Thompkins,* 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). A manifest weight challenge raises factual issues and our review is as follows:

"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *State v. Townsend*, 8th Dist. Cuyahoga No. 107177, 2019-Ohio-544, ¶ 20. "Sitting as the 'thirteenth juror,' the court of appeals considers whether the evidence should be believed and may overturn a verdict if it disagrees with the trier of fact's conclusion." *State v. Jordan*, 2023-Ohio-3800, ¶ 17. Further, inconsistencies in a witness's testimony do not automatically entitle a defendant to a reversal of trial. *State v. Solomon*, 8th Dist. Cuyahoga No. 109535, 2021-Ohio-940, ¶ 62, citing *State v. Nitsche*, 2016-Ohio-3170, 66 N.E.3d 135, ¶ 45 (8th Dist.).

{¶ 12} Grier highlights differences between J.G.'s testimony at trial and her prior statements. He argues that the differences between J.G.'s testimony and the statements noted by the SANE nurse describe two different incidents. He notes that J.G. said Grier showed up unexpectedly to the house, but that the SANE examiner noted J.G. said Grier called her in advance of coming to the house. Grier argues that J.G. testified that the two fell asleep on the couch and she woke to Grier on top of her but the SANE noted that J.G. said Grier immediately assaulted her and they wrestled prior to the sexual assault. Additionally, Grier notes a discrepancy as to when J.G. said the assault occurred and the extent of any injuries suffered. Because

of this, Grier asserts that J.G. and her testimony were wholly without credibility and, therefore, his conviction is against the manifest weight of the evidence.

{¶ 13} Although there may have been discrepancies between J.G.'s prior statements and her testimony, the discrepancies do not render J.G.'s testimony wholly incredible or unbelievable. As to how and when Grier came to the house, both the notes taken during the exam and Grier's testimony are consistent that Grier came to the house. As to when the assault occurred, J.G. testified that they both fell asleep and the assault occurred near daybreak. The notes taken during the exam are silent as to the amount of time that elapsed between Grier's arrival and when the assault occurred. Additionally, we note J.G. reported the rape the day the assault occurred and submitted to a sexual-assault examination. Further, the statements noted by the nurse during the sexual-assault examination were made four years prior to trial.

{¶ 14} Having reviewed the entire record and having considered J.G.'s testimony, we do not find that the inconsistencies in J.G.'s statements and testimony as argued by Grier are so irreconcilable that we must find J.G.'s testimony so completely incredible that the jury lost its way in resolving any conflicts and inconsistencies between her testimony and prior statements. Accordingly, we cannot say Grier's conviction is against the manifest weight of the evidence or that this case is the exceptional one in which a manifest injustice occurred.

{¶ 15} Grier's sole assignment of error is overruled.

# CONCLUSION

{¶ 16} We affirm Grier's conviction for rape. Although there were discrepancies between the victim's testimony at trial and prior statements, we do not find the conviction to be against the manifest weight of the evidence. Accordingly, we do not find the victim's testimony so incredible that the jury lost its way in resolving conflicts in the victim's testimony and prior statements or that this case is the exceptional case in which a manifest miscarriage of justice occurred.

{¶ 17} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

MICHAEL JOHN RYAN, J., and
SEAN C. GALLAGHER, J., CONCUR