[Cite as *State v. Grier*, 2025-Ohio-2529.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                          No. 114633

    v.                                   :

GRANT GRIER,                            :

    Defendant-Appellant.          :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 17, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-674037-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Owen W. Knapp, Assistant Prosecuting Attorney, *for appellee.*

Russell S. Bensing, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Grant Grier ("Grier") appeals the trial court's decision denying his postconviction-relief petition without conducting a hearing. This court affirms.

{¶ 2} Grier was charged with rape, a first-degree felony in violation of R.C. 2907.02(A)(2). A jury trial began on May 30, 2023, and the jury found Grier guilty.

On June 15, 2023, Grier filed a Crim.R. 29 motion for judgment of acquittal, contesting the sufficiency of the evidence presented demonstrating that Grier used force in committing the rape. During the sentencing hearing on July 11, 2023, the court denied the Crim.R. 29 motion and sentenced Grier pursuant to the Reagan Tokes Law to three to four and a half years. Grier filed a direct appeal; this court affirmed his conviction. *State v. Grier*, 2024-Ohio-1980 (8th Dist.).

{¶ 3} In September 2024, Grier filed a timely petition for postconviction relief, asserting that he received ineffective assistance of trial counsel because his counsel suffered a medical condition on the date of trial. Grier specified that his counsel had suffered a heart attack three years prior to the trial and had been hospitalized with atrial fibrillation on the Friday before trial commenced. Attached to the petition was an affidavit from his trial counsel averring that during trial, he "was struggling with dehydration, which may have been caused by the medical incident. My ability to focus may have been affected, as at one time I did lose my train of thought when talking to the judge." Counsel further averred, "I have concerns that my medical condition may have affected by [sic] my trial performance." In a written decision, the trial court denied the petition and declined to hold a hearing. Grier appeals, assigning one error for our review:

> The trial court abused its discretion in denying Defendant's petition for [postconviction] relief without a hearing.

{¶ 4} Our review of a trial court's decision to deny a postconviction-relief petition without conducting a hearing is for an abuse of discretion. *State v. Smith*, 2010-Ohio-1869, ¶ 23 (8th Dist.).

{¶ 5} Postconviction relief is a civil collateral attack on a judgment that allows a defendant to establish a violation of his constitutional rights. *State v. Calhoun*, 86 Ohio St.3d 279, 281 (1999); R.C. 2953.21. A hearing is not automatically required whenever a petition for postconviction relief is filed. *State v. Jackson*, 64 Ohio St.2d 107, 110 (1980). A hearing is only necessary if the trial court finds that the petition contains substantive grounds for relief after review of the petition, the supporting affidavits, the documentary evidence, and all of the files and records pertaining to the proceedings. R.C. 2953.21(D).

{¶ 6} When a postconviction-relief petition alleges ineffective assistance of counsel, the petitioner "bears the initial burden to submit evidentiary material which contains sufficient operative facts to demonstrate a substantial violation of defense counsel's essential duties to his client and that this ineffectiveness operated to the client's prejudice." *Jackson* at syllabus.

{¶ 7} Grier's postconviction-relief petition included an affidavit from trial counsel averring that his medical condition "may" have impacted his trial performance. Grier also relies upon the transcript, noting "four separate occasions" where trial counsel complained of dehydration. He specifically cites only one instance, occurring during closing argument:

I have had some little health things. I'm dehydrated and they tell me I got to drink a lot of water, so that's why I'm sipping on water over there. Again, if that was distracting, I'm sorry.

(Tr. 627.)

{¶ 8} Grier also cites an instance where trial counsel announced his intention to move for a mistrial, but was unable to articulate the grounds for the mistrial:

> [TRIAL COUNSEL]: Judge, real quickly if I could. Judge, I'm pretty sure I made a pretty thorough record on this, but to be on the safe side in case I lose, I'm going to move for a mistrial based on some of the Court's rulings. I believe that a primary injustice, not intentionally, but it's been done, that I was not allowed to cross-examine on certain issues which I have made the record on. I lost my train of thought here, but I tell you what, I'll pick it up when we pick up again. I just went blank for a moment, but it was — what was I arguing about? I'll straighten it out, Your Honor.
>
> THE COURT: Well, are you doing something now for me to rule? Because I mean, we're on the record.
>
> [TRIAL COUNSEL]: I understand that, and I have completely gone blank on where I was going, so I'll withdraw the motion at this time. I may ask you — if I make it, it is going to be a 30-second motion and I suspect the Court would overrule it. It would only be for purposes of protecting the record.
>
> THE COURT: Are you doing that now?
>
> [TRIAL COUNSEL]: I don't think I can right this minute. I'm just going completely blank on the issue.

(Tr. 588-589.)

{¶ 9} We review and address these instances within the context of the entire record, as required by R.C. 2953.51(D). Prior to voir dire, Grier's trial counsel put the following on the record:

As you're aware Friday, I was in the hospital. My heart went out of rhythm. They put it back in rhythm. I specifically asked the doctors, am I okay to be going to trial? And just for the record, so my client's comfortable, they said I'm fine. If there is any issues, I would certainly alert the Court right away, but I would not ever go to start a trial unless I believed I could finish it, Your Honor.

(Tr. 26.)

{¶ 10} Then again, during trial, Grier's trial counsel again stated for the record:

Judge, last Friday, as I mentioned, I was in AFib. I was told by the doctors I would be fine. And I know this is going on, but I'm severely dehydrated. That's why you see me drinking so much water. It does not affect my cognition or my ability, but if I raise my hand, it might be because I would like a little break. I just wanted to let you know why I might be doing that, but again, for the record, it's not affecting my ability to represent him.

(Tr. 548.)

{¶ 11} Soon after abandoning his attempt to move for a mistrial, Grier's trial counsel remembered the basis for the motion for mistrial and indeed made the motion:

Judge, it just hit me and it will be very brief. The reason for the mistrial is — . . . I am moving for a mistrial because the state of the evidence now is the jury does not know that Pete Demopoulos and that Sophia, the witness victim advocate, lied to [the victim]. If you listen to the recording, which I will mark later as a proffer exhibit, if you look at that exhibit, she more than once says "I don't want to go forward with this if he's going to go away," and the words almost exactly out of Pete's mouth is hey, listen, I'm not a lawyer, but sentencing is up to the Judge. The Judge can send him away. The Judge can give him probation or the Judge can do both, okay? That's a lie. That's just a lie. He lied to her, and it was only after that lie that she agreed to go forward. And whether or not she wanted to go forward is certainly something that I can argue that it tends to show that wasn't true, so I think — I mean, I'm not saying anything bad about you, because I like you, but I think

you made a mistake there, so I'm going to move for a mistrial. As well during the State's direct, [the victim] said every time we had sex after January, it was forcible, and I was not allowed to cross-examine on that. So for those two reasons, I move for a mistrial. Thank you.

(Tr. 591-592.)

{¶ 12} Grier's assignment of error is overruled for two reasons. First, the record demonstrates that Grier, the trial court, the jury, and the State were all aware of Grier's counsel's medical conditions before voir dire began. "When a petitioner seeks postconviction relief on an issue that was raised or could have been raised on direct appeal, the petition is properly denied by the application of the doctrine of res judicata." *State v. Ray*, 2020-Ohio-5004, ¶ 10 (8th Dist.), citing *State v. Tucker*, 2005-Ohio-109, ¶ 11 (8th Dist.). Despite Grier's counsel making a thorough record of his medical condition at trial, Grier did not pursue this issue on direct appeal, nor does he supply any extrinsic evidence aside from his trial counsel's affidavit averring that his medical condition "*may*" have impacted his trial performance.

{¶ 13} Second, the impact of trial counsel's medical condition and the misremembering incident, taken together, are insufficient "operative facts to demonstrate a substantial violation of defense counsel's essential duties and that this ineffectiveness operated to" Grier's prejudice. Neither Grier's petition nor trial counsel's affidavit can point to a specific instance demonstrating that defense counsel violated his essential duties. The record demonstrates that despite his medical condition, trial counsel's physician did not express any concern with counsel's ability to go forward with trial and counsel maintained his ability to

continue throughout trial. Moreover, the record demonstrates that Grier's counsel expressed his argument for a mistrial only moments after he was unable to articulate them, thus preserving the issue for appeal. Accordingly, Grier has not demonstrated a substantial violation of defense counsel's essential duties and that this ineffectiveness operated to his prejudice.

{¶ 14} This court has thoroughly and carefully reviewed the record before us pursuant to R.C. 2953.51(D), including the transcript and affidavit that Grier relies upon as evidence of his trial counsel's ineffectiveness. After review, we cannot conclude that Grier met his evidentiary burden as required in R.C. 2953.51(D). Therefore, we find that the trial court did not abuse its discretion in denying Grier's postconviction-relief petition without conducting a hearing.

{¶ 15} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

MICHELLE J. SHEEHAN, P.J., and
LISA B. FORBES, J., CONCUR